IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARY BAKEWELL,                                    07-CV-1295-BR

         Plaintiff,                              OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

         Defendant.


TIM WILBORN
2020-C SW 8th Avenue, PMB #294
West Linn, Oregon  97068
(503) 697-7019

         Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053


1   -  OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**KATHRYN A. MILLER**
Office of the General Counsel
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2240

        Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Mary Bakewell seeks judicial review of a final

decision of the Commissioner of the Social Security

Administration (SSA) in which he denied Plaintiff's protective

application for Disability Insurance Benefits (DIB).  This Court

has jurisdiction to review the Commissioner's decision pursuant

to 42 U.S.C. § 405(g).

     Following a thorough review of the record, the Court **AFFIRMS**

the Commissioner's final decision.


                    **<u>ADMINISTRATIVE HISTORY</u>**

     Plaintiff filed her application for DIB on March 6, 2003.

The application was denied initially and on reconsideration.  An

Administrative Law Judge (ALJ) held a hearing on November 2,

2005.  Plaintiff was represented at the hearing.  Plaintiff, lay

witness Karen Wright, and a vocational expert (VE) testified at

the hearing.

2   -  OPINION AND ORDER

The ALJ issued a decision on June 26, 2006, in which he found Plaintiff was not entitled to benefits.  That decision became the final decision of the Commissioner on July 5, 2007, when the Appeals Council denied Plaintiff's request for review.


## BACKGROUND

Plaintiff was 53 years old at the time of the hearing. Tr. 566.[1]  Plaintiff completed high school and some business vocational courses in medical transcription.  Tr. 566.  She worked as a medical transcriptionist for Providence Medical Group until December 12, 2002.  Tr. 568.

Plaintiff alleges disability due to carpal-tunnel syndrome (CTS), tenosynivitus, sciatica, neuropathy in the right leg, and migraine headaches.  Tr. 77.

Plaintiff reported wrist and elbow pain to Certified Physician's Assistant (PAC) Theresa Brooks on March 4, 1998. Tr. 350.  At that time, she was diagnosed with tendinitis and tennis elbow.  Tr. 350.  On April 7, 1998, Plaintiff had not shown any improvement and was diagnosed with CTS.  Tr. 349.  That diagnosis was confirmed by an electrodiagnostic evaluation performed by Peter Grant, M.D., on January 1, 1999, who also recommended bilateral carpal-tunnel decompressions.  Tr. 152-53.

---

[1] Citations to the official transcript of record filed by the Commissioner on January 11, 2008, are referred to as "Tr."

3    -   OPINION AND ORDER

Plaintiff was referred to Paul Sternenberg, M.D., who performed surgery on Plaintiff's right arm on May 30, 2002.  Tr. 437.  By July 10, 2003, Dr. Sternenberg had concluded the surgery was unsuccessful.  Tr. 385.  On September 4, 2003, Dr. Sternenberg released Plaintiff to work, but he restricted her from keyboarding, pushing, or pulling.  Tr. 381-82.  Plaintiff was terminated from her employment on December 12, 2002.  Tr. 23, 78, 581.

Plaintiff testified she can only use her hands for ten minutes and then must rest them for 30 minutes.  Tr. 584.  She also stated she cannot write more than a few lines at a time.  Tr. 581.

Plaintiff has had three surgeries on her back, the last of which, a laminectomy, took place in 1991.  That surgery caused some nerve damage to her right lower extremity, which resulted in a gait disturbance.  Because of the gait disturbance, Plaintiff has frequent leg discomfort and cramps.  Tr. 315.

Plaintiff testified she could walk about one block with her pain increasing and balance decreasing as she walks.  Tr. 576.  She testified she cannot stand for longer than ten minutes.  Tr. 577.

Plaintiff first reported having migraine headaches on September 16, 1998.  Tr. 339.  On December 3, 1999, she reported the headaches had increased in intensity and frequency.  Tr. 320.

PAC Brooks prescribed preventative medication.  Tr. 320-21.

Plaintiff testified she experiences migraines two times a month on average, and they typically incapacitate her for five days.  Tr. 579-80, 587.  In addition, Plaintiff had a syncopal episode in November 2003, and she has complained of occasional dizzy spells since that time.

At the conclusion of the hearing, the ALJ determined a supplemental examination of Plaintiff's lower extremities was required to complete the record.  The supplemental examination was performed by Jeffrey A. Solomon, M.D.  Tr. 594.

The ALJ ultimately found Plaintiff has the severe impairments of extensor tendinitis of the forearms and lumbar degenerative disc disease causing right peroneal neuropathy, but the ALJ concluded Plaintiff is not disabled and, therefore, is not entitled to benefits because she retains the residual functional capacity (RFC) to perform jobs that exist in significant numbers in the national economy such as receptionist, appointment clerk, and motor-transportation dispatcher.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir.

2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).


### DISABILITY ANALYSIS

**I.    The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  *See also* 20 C.F.R. § 404.1520(a).  Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R. § 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any "medically severe impairment or combination of impairments."  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful

activity." *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R.
§ 404.1520(a)(4)(iii).  The criteria for the listed impairments,
known as Listings, are enumerated in 20 C.F.R. part 404, subpart
P, appendix 1 (Listing of Impairments).

In the Commissioner proceeds beyond Step Three, he must
determine the claimant's RFC, which "is an assessment of the
sustained, work-related physical and mental activities" that the
claimant can still do "on a regular and continuing basis" despite
his limitations.  20 C.F.R. § 404.1520(e).  *See also* Soc. Sec.
Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work that she has done in the past.  *Stout*, 454 F.3d at 1052.
*See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine
whether the claimant is able to do any other work that exists in
the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20
C.F.R. § 404.1520(a)(4)(v).  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can do.  *Stout*, 454 F.3d at
1052.  *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.
1999).  The Commissioner may satisfy this burden through the
testimony of a VE or by reference to the Medical-Vocational
Guidelines set forth in the regulations at 20 C.F.R. part 404,

subpart P, appendix 2.  If the Commissioner meets this burden,
the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).


## ALJ'S FINDINGS

At Step One, the ALJ found Plaintiff has not engaged in any
substantial gainful activity since her employment ended on
December 12, 2002.

At Step Two, the ALJ found Plaintiff's extensor tendinitis
of the forearms, lumbar degenerative disc disease, and the
resulting right peroneal neuropathy are severe impairments.
Tr. 23.  The ALJ concluded Plaintiff's migraines are not severe
because the "evidence shows that her migraines are under
excellent control with medication."  Tr. 23.  The ALJ also found
Plaintiff's bilateral CTS is not severe because "it has been
asymptomatic for a long time."  Tr. 23.  In addition, the ALJ
concluded the medical evidence did not link various other
symptoms and conditions such as a November 2003 syncopal episode
and occasional dizzy spells to "a severe medical condition."
Tr. 23.

At Step Three, the ALJ found Plaintiff's impairments do not
meet or equal the criteria for any Listed Impairment in 20 C.F.R.
part 404, subpart P, appendix 1.  Tr. 24.  In his assessment of
Plaintiff's RFC, the ALJ found Plaintiff is able to perform some

sedentary[2] work; to lift and to carry 20 pounds occasionally and
10 pounds frequently without pushing or pulling; to sit about six
hours in an eight-hour workday and to stand or walk at least two
hours in a workday; to occasionally use foot controls with her
right lower extremity; to occasionally balance, stoop, kneel,
crouch, crawl, and climb stairs but not climb ramps, ladders, and
scaffolds; to grasp without limitation; and to perform constant
fine manipulation other than keyboarding.  Tr. 24.  The ALJ also
found Plaintiff should avoid concentrated exposure to hazards.
Tr. 24.  In addition, the ALJ determined Plaintiff has skills
from her past relevant work that are transferrable to other
occupations.  Tr. 27.

     At Step Four, the ALJ found Plaintiff is unable to perform
any past relevant work.  Tr. 26-27.

     At Step Five, the ALJ found Plaintiff is capable of working
in occupations that exist in significant numbers in the local and
national economies.  Tr. 27.  Accordingly, the ALJ found
Plaintiff is not disabled and, therefore, is not entitled to
benefits.  Tr. 27.

_____

     [2] Sedentary work involves lifting up to ten pounds
occasionally and less than ten pounds frequently, sitting most of
the time, and may involve walking or standing for brief periods.
20 C.F.R. § 416.967.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) finding Plaintiff's migraines were not a severe impairment; (2) rejecting Plaintiff's testimony; (3) rejecting the opinions of treating physician Dr. Sternenberg and examining physician Dan Roberts, M.D.; (4) finding Plaintiff had transferable skills, which resulted in an erroneous RFC; and (5) posing an inadequate hypothetical to the VE.

**I.   The ALJ properly concluded Plaintiff's migraine headaches are not a severe impairment.**

Plaintiff contends the ALJ erred at Step Two when he found Plaintiff's migraines are not a severe impairment.

A severe impairment is one that "significantly limit[s]" the claimant's physical or mental ability to conduct basic work activities." *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). *See also* 20 C.F.R. § 404.1520©)). SSR 96-3p clarifies this standard:  An impairment is not severe if it "has no more than a minimal effect on the ability to do basic work activities." *Id. See also Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  Step Two analysis is the "de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citation omitted).

The ALJ determined Plaintiff's migraines are not severe because they "are under excellent control with medication" as reflected in the March 27, 2001, chart note by Plaintiff's primary care provider, PAC Brooks.  Tr. 23.  Plaintiff, however, contends the ALJ erred when he relied on that note because it predates Plaintiff's alleged disability onset date.  Nevertheless, the Court finds the record supports the ALJ's conclusion that the migraines are under control with medication.  For example, Plaintiff reported to Family Nurse Practitioner (FNP) Sue Basilicato on December 12, 2002, that the migraines occurred "no more than twice a month" and that the medication Zomig had "good effect."  Tr. 251.  On October 29, 2004, Plaintiff also reported to FNP Dea Nason that Zomig tended to alleviate the pain from her migraines.  Tr. 518.  In addition, on March 17, 2005, Plaintiff reported to FNP Nason that the medication Imitrex "usually worked" to alleviate her migraines.  Tr. 544.

On this record, the Court finds the ALJ did not err at Step Two when he found Plaintiff is able to control her migraines with medication and concluded, therefore, that her migraines are not a severe impairment.

## II. The ALJ properly found Plaintiff's testimony not entirely credible.

Plaintiff contends the ALJ erred by finding her testimony not entirely credible.

The test for rejecting a claimant's subjective symptom

testimony is set out in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The *Cotton* test establishes two basic requirements for a claimant to present credible symptom testimony:  She must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d at 1407.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  *See also Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).  General assertions that the claimant's testimony is not credible are insufficient.  "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

The ALJ determined Plaintiff's extensor tendinitis of the forearms, lumbar degenerative disc disease, and the resulting right peroneal neuropathy are severe impairments.  The doctors who treated or examined Plaintiff agree Plaintiff has impairments that can produce some degree of symptom.  Tr. 378, 456, 221. Accordingly, the Court concludes Plaintiff has satisfied the first two prongs of the *Cotton* test by providing evidence of

impairments that could reasonably cause her some degree of pain. 799 F.2d at 1407. Because the ALJ did not determine Plaintiff was malingering, the ALJ must provide clear and convincing reasons for rejecting Plaintiff's subjective pain testimony. *Lester*, 81 F.3d at 834.

As noted, Plaintiff testified she could walk about one block with her pain increasing and balance decreasing as she walks, and she cannot stand for longer than ten minutes. Tr. 576-77. Plaintiff testified she can only use her hands for ten minutes and must then rest them for 30 minutes. Tr. 584. She also stated she cannot write more than a few lines at a time. Tr. 581.

Plaintiff testified her migraines occur approximately twice each month and incapacitate her for about five days each month. Tr. 579-80, 587. Plaintiff also testified she takes care of her five-year old grandson for whom she is sole guardian. She also does household chores such as laundry, dishes, cooking, and grocery shopping. Tr. 578-80, 586.

The ALJ found the "intensity, duration, and limiting effects of [Plaintiff's] symptoms" as reported by Plaintiff were not entirely credible and that Plaintiff "somewhat exaggerated her symptoms." Tr. 24, 26. In reaching his determination, the ALJ relied on the reports of Registered Occupational Therapist (OTR) Gail Frank; Dr. Solomon; and J. Scott Pritchard, D.O., who each

14  -  OPINION AND ORDER

noted in their opinions that Plaintiff's symptoms are not commensurate with her impairments.  For example, OTR Frank reported Plaintiff had put forth only minimal effort on the Functionality Capacity Evaluation (FCE), which resulted in a validity criteria of only 30/46.  Tr. 220.  OTR Frank found the validity criteria were low because of "inconsistent performance" and fear of pain.  Tr. 220.  In addition, Dr. Solomon opined Plaintiff's pain complaints "seem excessive given the mild physical exam findings and the fact that she has been off work for about three years."  Tr. 551.  Dr. Pritchard also found Plaintiff has "impairments that would reasonably cause pain and some degree of functional limitations," but "the current evidence does not fully support the severity of her reported forearm pain."  Tr. 557.  He concluded Plaintiff's statements were "partially credible."  Tr. 557.

On this record, the Court concludes the ALJ did not err when he found Plaintiff's testimony not entirely credible because the ALJ gave legally sufficient reasons supported by substantial evidence in the record for doing so.

**III. The ALJ properly rejected the opinions of Dr. Sternenberg, treating physician, and Dr. Roberts, examining physician.**

Plaintiff asserts the ALJ erred by rejecting the limitations and restrictions recommended by Drs. Sternenberg and Roberts, her treating and examining physicians.

An ALJ may reject an examining or treating physician's

15  -  OPINION AND ORDER

opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Id*.  *See also Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id*. at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id*. at 600.

**A.    Upper Extremities.**

Plaintiff contends the ALJ erred by rejecting the lifting restrictions of less than ten pounds set by Dr. Sternenberg and

by finding Plaintiff's elbow function was well-restored by the
time of Dr. Sternenberg's final report on September 4, 2003.  In
addition, Plaintiff contends the ALJ erred by rejecting
Dr. Roberts's limitation as to the "constant fine manipulation"
of Plaintiff's right hand.

### 1.    Dr. Sternenberg's Opinion.

Dr. Sternenberg treated Plaintiff's arms with surgery,
medication, and ultrasound therapy from February 20, 2002,
until September 4, 2003.  Tr. 437, 379.  By July 10, 2003,
Dr. Sternenberg concluded Plaintiff had reached a "plateau" in
the treatment of her arms.  Tr. 385.  He opined in his
September 4, 2003, report that Plaintiff could lift less than ten
pounds on an occasional or frequent basis and could reach
frequently.  Tr. 380-85.  In addition, Dr. Sternenberg opined
Plaintiff could repetitively use her right and left hands for
fine manipulation and simple grasping, but could not use either
hand for pushing, pulling, or keyboarding.  Tr. 381.

### 2.    Dr. Roberts's Opinion.

Dr. Roberts examined Plaintiff on July 9, 2003, and
concluded she could "do light duty that does not involve
repetitive use of her right hand."  Tr. 218.

### 3.    ALJ's Opinion.

The ALJ determined Plaintiff was able to lift and to
carry 20 pounds occasionally and 10 pounds frequently and was

17  -  OPINION AND ORDER

capable of simple grasping and constant fine manipulation.
Tr. 24.  The ALJ's opinion is consistent with Dr. Sternenberg's
opinion except for the ten-pound lifting limitation.  The ALJ,
however, rejected Dr. Roberts's limitation on repetitive right-
hand manipulation.  The ALJ instead gave greater weight to the
opinions of Dr. Solomon, an examining physician; Dr. Pritchard; a
State Disability Determination Service (DDS)[3] physician; and OTR
Frank, a medical source.

The ALJ found the opinions of Drs. Sternenberg and Roberts
to be inconsistent with the results of Dr. Solomon's examination
of Plaintiff.  For example, Dr. Solomon opined Plaintiff's "motor
examination in the upper limbs show 5/5 strength in all muscle
groups tested."  Tr. 549.  Dr. Solomon also noted Plaintiff's CTS
and de Quervain's syndrome both "appear asymptomatic and stable."
Tr. 551.

The ALJ also found the opinions of Drs. Sternenberg and
Roberts to be inconsistent with the conclusions of Dr. Pritchard.
Dr. Pritchard reviewed Plaintiff's medical records and found
Plaintiff could lift 20 pounds occasionally and 10 pounds
frequently.  Tr. 553.  He also concluded Plaintiff was capable of
constant fine manipulation and simple grasping.  Tr. 555.

---

[3] Disability Determination Services (DDS) is a federally
funded state agency that makes eligibility determinations on
behalf and under the supervision of the Social Security
Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R.
§ 416.903.

The ALJ also found the opinions of Drs. Sternenberg and Roberts to be inconsistent with the opinion of OTR Frank, a medical source.  Medical sources are divided into two categories: "acceptable" and "not acceptable."  20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists.  § 416.902.  Medical sources classified as "not acceptable" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors. SSR 06-03p, at *2.  The Social Security Administration notes:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not acceptable medical sources, such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.  Opinions from these medical sources, who are not technically deemed acceptable medical sources under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p, at *3.  Factors the ALJ should consider when determining the weight to give an opinion from those "important" sources include:  How long the source has known the claimant and how often the source has seen the claimant; the consistency of the source's opinion with other evidence in the record; the relevance of the source's opinion; the quality of the source's explanation of his opinion; and the source's training and

19  -  OPINION AND ORDER

expertise.  SSR 06-03p, at *4.  On the basis of the above factors, the ALJ may assign a medical opinion from a source that is not an "accepted medical source" either greater or lesser weight than that of an accepted medical source.  SSR 06-03p, at *5-*6.  The ALJ, however, must explain the weight assigned to such sources to the extent that a claimant or subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p, at *6.

OTR Frank performed a comprehensive FCE of Plaintiff as ordered by Dr. Sternenberg.  In the FCE, OTR Frank concluded Plaintiff could lift up to 20 pounds occasionally and 14 pounds frequently.  Tr. 220-21.  OTR Frank also reported in the FCE that Plaintiff was capable of operating light arm controls and engaging in fine hand activity.  Tr. 221.  OTR Frank noted on the FCE that Plaintiff had put forth poor effort, which resulted in low validity criteria.  Tr. 220.

The ALJ gave OTR Frank's FCE "great weight" in part because the poor validity results likely caused it to be "very generous in Plaintiff's favor."  Tr. 25.  The ALJ also noted OTR Frank's assessment is consistent with other medical evidence in the record such as the opinions of Drs. Solomon and Pritchard, which indicate Plaintiff can work at a sedentary level, has the capacity to lift 20 pounds, has some difficulty with her back, has foot dysfunction and abnormal gait, but does not have any elbow difficulty.  Tr. 25.

On this record, the Court finds the ALJ did not err when he rejected Dr. Sternenberg's opinion as to Plaintiff's ten-pound lifting limitation and Dr. Roberts's opinion as to Plaintiff's upper extremities because the ALJ gave legally sufficient reasons supported by substantial evidence in the record for doing so.

**B.    Lower Extremities.**

Plaintiff asserts the ALJ erred when he rejected Dr. Sternenberg's restrictions in regard to Plaintiff's lower extremities.

**1.    Dr. Sternenberg's Opinion.**

Dr. Sternenberg's September 4, 2003, opinion includes conclusions as to Plaintiff's lower extremities. Dr. Sternenberg, however, did not treat Plaintiff for lower-extremity symptoms during the time she was in his care.  Tr. 378-428.  Dr. Sternenberg, nevertheless, concluded Plaintiff could sit for eight hours of an eight-hour workday but could not stand or walk at all in an eight-hour workday.  Tr. 381.  He also concluded Plaintiff could balance or kneel only intermittently and could not stoop, crouch, crawl, or climb at all.  Tr. 380-81.

**2.    ALJ's Opinion.**

The ALJ determined Plaintiff could sit about six hours in an eight-hour workday and stand or walk for at least two hours in an eight-hour workday.  Tr. 24.  He also found Plaintiff could occasionally use foot controls with her right leg and

occasionally balance, stoop, kneel, crouch, crawl, and climb
stairs but not ramps, ladders, or scaffolds. Tr. 24. The ALJ
noted Dr. Sternenberg's report did not consider Plaintiff's post-
laminectomy issues, including the nerve damage and resulting
back, leg, and foot problems. Tr. 25. The ALJ also found
Dr. Sternenberg's opinions as to Plaintiff's lower extremities
were inconsistent with each other. Tr. 25. For example, on
February 27, 2002, Dr. Sternenberg found Plaintiff could stand or
walk for eight hours in a workday, but on September 4, 2003, he
found she could not stand or walk at all in an eight-hour
workday. Tr. 395, 381.

In addition, the ALJ found Dr. Sternenberg's opinion
inconsistent with the opinions of Dr. Solomon, an examining
physician; Dr. Pritchard, a reviewing physician; and with the FCE
performed by OTR Frank. Dr. Solomon reported Plaintiff showed
"full hip, knee, and ankle range of motion" and "5/5 strength in
the hip flexors, hip extensors, knee extensors, and knee flexors"
as well as in the "ankle dorsiflexors, toe extensors, EHL and
planter flexors" with only a "4+" rating on the right side.
Tr. 459, 551. Dr. Pritchard found Plaintiff could occasionally
balance, stoop, kneel, crouch, crawl, and climb ramps or stairs
but not ladders or scaffolding. Tr. 554. OTR Frank found
Plaintiff could sit constantly, stand occasionally, and operate
light leg controls. Tr. 221. OTR Frank also reported Plaintiff

could bend or climb stairs infrequently, but could not squat, kneel, climb ladders, or crawl.  OTR Frank also gave Plaintiff a sedentary work classification.  Tr. 221.

On this record, the Court concludes the ALJ did not err when he rejected Dr. Sternenberg's opinion as to Plaintiff's lower extremities because the ALJ gave legally sufficient reasons supported by substantial evidence in the record for doing so.

**V.    VE Testimony.**

   **A.    Transferable Skills.**

Plaintiff contends the VE improperly attributed to her the transferable skills of business procedure, equipment knowledge and skills, and communication skills.

To determine whether skills are transferable, the ALJ may consult a VE.  SSR 82-21.  Higher skill levels are more likely to be transferable.  20 C.F.R. § 1568(d).

The VE testified at the hearing that the title for Plaintiff's past relevant work as a medical transcriptionist is medical-records technician in the *Dictionary of Occupational Titles* (DOT), that it is skilled employment, and that it has a specific vocational preparation (SVP) code of six.  Tr. 594.  The VE also testified Plaintiff's past relevant work skills, which include business procedure, equipment knowledge and skills, and communication skills, are transferable.  Tr. 146.  The ALJ relied on the VE's testimony when he determined the skills that

Plaintiff acquired from her past relevant work are transferable. Tr. 27.

On this record, the Court concludes the ALJ did not err by relying on the VE's testimony to determine that Plaintiff's skills from her past relevant work are transferable.

**B.    Hypothetical.**

Plaintiff contends the ALJ posed an inadequate hypothetical to the VE, which, in turn, resulted in an erroneous conclusion as to the jobs that Plaintiff could perform.  "Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

At the conclusion of the hearing, the ALJ determined a supplemental examination of Plaintiff's lower extremities was required to complete the record.  Tr. 594.  As a result, the ALJ did not pose a hypothetical to the VE at the hearing.  The ALJ, however, posed a hypothetical to the VE in the form of written interrogatories after the results of the supplemental examination were received.  Tr. 26, 148.  The ALJ attached to the hypothetical a copy of the RFC setting out all of Plaintiff's limitations.  Tr. 148.  The ALJ also directed the VE to take into account all of the limitations set forth in the RFC:  For example, the fact that Plaintiff can occasionally lift 20 pounds; frequently lift 10 pounds; can stand or walk for two hours in an

eight-hour workday; can sit six hours in an eight-hour workday; cannot push or pull; can occasionally use foot controls; can occasionally climb, stoop, kneel, or crawl; cannot balance; is capable of simple grasping and constant fine manipulation except for keyboarding; and can withstand only limited exposure to hazards. Tr. 552. In addition to those limitations, the ALJ also asked the VE to consider Plaintiff's age (53) and education level (high school).

Based on those factors, the ALJ asked two questions: (1) whether, based on the above limitations, Plaintiff could perform her past relevant work and (2) whether Plaintiff can perform work that would use any of her transferable skills or that would be entry-level or unskilled. Tr. 148.

In response to the first question, the VE stated Plaintiff cannot perform her past relevant work. Tr. 146. In response to the second question, the VE concluded Plaintiff could perform the following occupations with her limitations and transferable skills: receptionist, appointment clerk, and motor-transportation dispatcher. Tr. 146.

On this record, the Court concludes the ALJ did pose an inadequate hypothetical to the VE because it accurately included

Plaintiff's limitations and transferable skills as reflected in the ALJ's findings and RFC assessment.

## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 17th day of September, 2008.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge